May it please the Court, in this case, an arbitrator was asked to decide a single issue. Yet, despite deciding that single issue in Ms. Sihota's favor, he imposed on her a 10-day suspension and he denied her three years of back pay. I find the record here in the arbitrator's decision and the transcript very confusing. You agree that the proposal in the final, well let me just start with the proposed removal. The proposed removal had two grounds. One, the willfulness one, which was automatic removal, and two, an efficiency of the service one for violating some other regulation, right? That's right. And I guess there's some question as to whether the final decision sustains both, or do you agree that the final decision sustains both as well? We don't agree that the final decision sustains both. Even though it says all reasons and specifications are sustained. That's right. If you read the transcript of the oral reply that you supplied to us earlier this week, it's pretty clear that the union understood that there were two charges being presented to the deciding official. That's right. Because the union official argued for mitigation based on Douglas factors, which would only apply to the second specification, not the first, right? That's right. So, I assume what you're basing your view of only the one specification with issue on is the colloquy back and forth in the transcript of the hearing before the arbitrator. Yes, that's correct. I mean, I know you still want to retain your argument that both grounds weren't sustained in the final decision, right? I don't see how that's really tenable when they say all basis and specifications were Well, the arbitrator at the hearing indicated that he interpreted the decision letter that way. That's my problem, is I've read this transcript a couple times through these relevant pages, and it seems to me that you're all talking past each other at various points. I mean, you can read it as the agency conceding that, yeah, the willfulness charge is only before it, or read it as them conceding that for that charge, the only issue is willfulness and mitigation's not on the table, which is true, but not saying anything about the other charges. I just don't know what to do with this. Let me lay it out. If the deciding official sustained both charges, if I find that that's the case, and if I find the agency hasn't waived both charges, then what are we supposed to do here? I don't think that you can find that the agency... Okay, I know that's your point, but please answer my hypothetical, which is, I conclude that the deciding official sustained both, and that in this colloquy, the agency did not specifically waive its right to rely on the second charge. Well, the IRS before this court on page 19 of their brief says that to be sure, only the willfulness issue was briefed and argued here, so I think that supports... Again, you're not answering my hypothetical. What do we do if I find that that second specification has been preserved, and the arbitrator should have decided it? If you make that finding, I think that you could remand the case to the arbitrator in order to give both parties an opportunity to present their evidence before the arbitrator on that issue. You don't think the arbitrator has somehow kind of implicitly made that finding by imposing a penalty for negligence, which is what that charge was based upon? I don't think you can. On page three of the arbitrator's decision, he sets out, and that's page five of the appendix, he sets out the issue statement, which is, did the loss taken on Ms. Zahota's 2003 tax return constitute, quote, willful neglect? And that language comes directly out of section 1203B9. And therefore, I think that's clear that the arbitrator set out to decide only that issue. But the issue then goes on to say, if not, in other words, if not of finding a willful neglect, then what is the appropriate remedy? That's right. What remedy issue is before the arbitrator if the only thing he's supposed to decide is willfulness and removal? Well, an arbitrator only has authority to answer the issues put to him. And so if the remedy portion of the issue statement wasn't included, it's possible that the arbitrator might not have had the authority to reinstate her upon a finding that her conduct was not willful. But the first charge had in the alternative that a violation of other laws, even if it's not determined to be willful, doesn't that implicate simple negligence that would sort of justify what the arbitrator has done? The notice of proposed removal included a charge that she violated other laws, rules, and regulations. And again, it's ambiguous whether the decision letter actually removed her on that basis. But it's clear that the parties agreed at the hearing and that the arbitrator said in his decision that he was setting out to decide only the willfulness issue. Go ahead. Did Ms. Cejota fail to accurately and fully pay her taxes, I'm quoting, in determination? That issue was not fully aired at the arbitration. There was some evidence and discussion of the closing agreement, which resolved her audit of her 2003 tax return, in which in that closing agreement resolving the audit, she admitted that she understated her tax liability negligently. Would that satisfy the second specification? Right. Reason two. I didn't see anything in the transcript of her oral response where she really disputed that. It was more directed to the removal and the ultimate penalty and the like. I'm not sure that we can draw any conclusions when, at the hearing, the parties all agreed that the only issue before the arbitrator was willfulness. Well, see, maybe it's that it was only willfulness because she didn't contest the failure to I think there were some references in the union brief before the arbitrator to whether or not she actually owned the business. If it hadn't been agreed upon at the hearing that willfulness was the only issue, perhaps the union could have presented its case differently. Can we just get to the transcript? I know what you're relying on, or I assume I know what you're relying on. You have some statements that are pretty good, but then you go on and read other parts and it's less clear. Let's look at page 189 of the transcript. You brought your transcript. Yes. Thank you. At the bottom, this is what I think, I assume you've cited this. I know that we've keyed in on this where the arbitrator asks, so I have to determine whether or not she willfully understated her tax return. Before this, I recognized the union representative who said the only issue is willfulness. The union or the agency representative says correct, and the arbitrator says no other charges that we're dealing with, correct. That seems pretty good for you, but then you follow on and just a couple of lines later on the next page, Mr. Daimler, who's the agency rep, says that's part of the problem with not having the deciding official. I don't know what that means. Then I could go on to the second part if I had her, and the arbitrator said it's pretty self-evident. What does that mean? Can't you read that to mean that we don't need to deal with the second part because she's already agreed in her settlement that she was negligent? There's no reason to go forward with putting on proof on that second issue. I think you have good arguments. I think there are arguments on the other side. This transcript makes almost no sense to me, so I don't see how we can decide this and just shouldn't send it back to the arbitrator because clearly the arbitrator thought that even if he didn't sustain the penalty on the first one, which was an up or down penalty, everybody seemed to understand that, that he had authority to discipline her for something else. The only thing could have been the second specification, right? Well, I'm not sure that's right. No, I'm not either. I don't understand what the arbitrator did here, but we have to assume that he thought he had some authority to impose a lesser sentence, and the only basis would have been the second specification, not the first, because I think even the government agrees that when the first is specification, it's up or down. If it's willful, she's out, and if it's not willful, she's in. Right. When I first read the arbitrator's decision, it appeared to me that the arbitrator was doing something similar to what the board did in the Burroughs case, which we cite in our brief, and there the board sustained a portion of the one charge that was before the board and then imposed a penalty on that basis, and this court found that that was improper. Well, if we only had one charge here, you would have a really good argument, but we have two charges, one of which could have supported the lesser penalty the arbitrator imposed. So, why isn't it just as likely that that's what the arbitrator meant? I don't think it can be just as likely because, again, on page three of his decision, he sets out the issue statement, whether Ms. Sohova- But again, doesn't that go back to this colloquy, which is, we don't need to deal with the second charge because it's clear on the record that she committed that. Let's just look at willfulness. If that's the reading of this colloquy, I know it's not your reading, but if that's the reading in this colloquy, then doesn't that explain his decision, which is, here's what I'm deciding? I don't think so, Your Honor, because on page 194 of the record, the arbitrator says, so you understand, and he's talking to agency counsel, so you understand that if I find that it's not willful, then I'm going to order her reinstatement, and Mr. Daimler says yes. But that doesn't answer the question. It still leaves open the whole issue we've been talking about, and you keep referring to the issue on page three of the arbitrator's decision. It's absolutely clear to me that what the arbitrator is saying is that I need to decide whether her filing was the result of willful neglect, and then he goes on to say, if not, I have to decide what is the appropriate remedy. So obviously he thought there was something else before him that he would have to address if he concluded that there was no willful neglect, and that's what the bulk of the opinion addresses that. Yes. My reading, again, of the remedy portion of the issue statement was- Just to point out that you're in your rebuttal time. Okay. Thank you. And there's some discussion of this to, I think it's pages 190 to 194, where the arbitrator asks union counsel, and then the second question should be, and what shall be the remedy? And the arbitrator says, so have you done a removal case before? Unless we ask what the remedy is, then can I go on to decide what I should do if I determined that Ms. Zahota's conduct was not willful? So I think that's why the second part of the issue statement, what shall be the remedy, is there. And on page 194, the counsel for the IRS agrees that if the arbitrator determines that her conduct was not willful, that she should be put back to work. But that kind of begs the question of put back to work without a suspension or not. I mean, they may have been agreeing that the second charge, absent the first, can't support a removal. But it doesn't imply that there's no lesser penalty. Negligent failure by an IRS agent is still something that has to be considered. I think other parts of the record, Your Honor, suggest that the IRS agreed that if the arbitrator determines that her conduct was not willful, that mitigation is not on the table. And I think that's in the IRS counsel's opening statement, which appears around page 43 and 44. But if I could reserve the balance of my time for rebuttal. All right. Good morning, and may it please the court. Go ahead, counsel. The arbitrator reasonably decided to mitigate the removal to a 10-day suspension, and it was within his authority. You agree that the first specification can't be mitigated, right? Well, Your Honor, I'm not... A statutory violation. When you... Only the agency can mitigate that. That's right. But, Your Honor, if you're referring to the willfulness aspect of the first... I want to be clear in terms of specifications versus reasons, and that's one of the aspects I wanted to be clear about in terms of what we're relying on here. Because we have, on page 80 of the appendix, is the proposed removal letter, and it specifies two reasons, both of which have specifications. The specifications are essentially the factual background. Right. There's two different things, but one of them requires willfulness, and that can't be mitigated. Well, actually, Your Honor, the first one's framed in the alternative, and if you look at page 80 of the appendix, you see that reason one... You're getting caught up in semantics, I think, here. There are two different reasons you proposed to remove her. One was based upon this mandatory statute that if she's willfully violating something, she's out, and there's no mitigation by the board or the arbitrator. Right? Yes, that's the first... And that wasn't sustained. That's correct, Your Honor. And so, all we're talking about now is whether you preserve the second one, which supports removal penalty, but can also be mitigated under Douglas, right? Well, yes. I think reason one is framed in the alternative and says, even if you did not act willfully, you failed to accurately state your tax liability. Reason two says, you failed to timely pay your federal tax liability. Those are sort of two non-willful allegations of misconduct, but Your Honor's question, I know what you're driving at, and yes, the willfulness issue... I'm just trying to say there's a difference between timely and accurate. I don't think we care for this purpose. There's two different bases. There's this unique statutory basis, which you didn't prove, and you're not contesting, and there's the regular Chapter 75 efficiency of the service reason. That's right, Your Honor. All of this could have been better laid out in everything here, including your letters, the agency's briefing, the transcripts and stuff, but what we have to decide, I think that's left for us is reading this very confusing transcript is whether you've weighed reliance on the Chapter 75 efficiency of the service reason or not. Well, Your Honor, yes. I think a couple of points in response to that. One is that the deciding official's letter is not ambiguous in terms of saying that all reasons and specifications are sustained. Sure, but that doesn't prevent the agency from getting up in the hearing before the arbitrator and saying, we're no longer relying on that. We're putting all our eggs in the basket of the willfulness charge. Your Honor, we acknowledge that the transcript is not a model of clarity. It's not good for you. Well, there are some mixed statements in there in terms of what was intended and what was not intended. What we submit is clear. It's better for the agency, or for the union, than for you. Well, Your Honor, I think just in terms of stepping back and what the parties were focused on in terms of the willfulness issue, keeping in mind that there is a statute that says if the willfulness determination is sustained, it is a mandatory removal. That is the mandatory penalty. And that was the initial threshold finding made by the agency. That was the focus of the discussion was willfulness. Now, it's true.  it still has the right to either remove or suspend her based upon a non-willful, a negligent violation. I don't think there is a clear statement to that effect, Your Honor. But by the same token, I don't think that there's a clear statement relinquishing it either. A clear waiver. A clear waiver. Ultimately, you have a decision issued by the arbitrator in which he adopts a, I should back up and say, even before you get the arbitrator's statement, you have the IRS's closure. He never presents that alternative reason and finds that it is sustained. Well, I actually disagree with that, respectfully, Your Honor. I think the portion that I would direct the court's attention to is pages 28 and 29 of the appendix where you have the findings that the arbitrator makes. It's under the caption findings, and he talks about reason one and reason two. With respect to specification one, he says, quote unquote, all true, but the failure was the result of negligence. I'm sorry. You're on 28 and 29. What part are you talking about? It's the section titled findings. I'm talking about the part where it says caption reason one and reason two. Under reason two, and I'm quoting, the arbitrator wrote, the grievant failed to timely pay her federal tax liability. That, in our view, is clearly adopting or sustaining charge two. It would be rendering that language meaningless to say, especially in light of the arbitrator's continued analysis of, if not willful, what do I do next, it would sort of read that out of his decision if you concluded that all he did was decide up or down on the willfulness issue. There's no factual dispute here. It's all interpreted. Well, Your Honor, I think that's correct. Counsel made a reference about whether or not negligence was in play. You have this closing agreement where Ms. Cejota acknowledged, and it's a final and binding agreement. She said, I did act negligently with respect to these 2003 taxes. There really was no factual contention that she failed to pay these taxes. Everybody was focused on state of mind. Essentially, that was the thrust of the entire hearing. You had a lot of colloquy back and forth on that, testimony back and forth on that. Ultimately, you have an arbitrator who is tasked under Douglas with, if he's not under the statute that requires mandatory removal, OK, what penalty do you have? And this court's decision in Lachance says that the board, or in this case, the arbitrator, if it is faced with a situation where it sustains some but not all of the charges, it can mitigate the penalty. And we think that that gave her control. And he did that. Sorry, go ahead. What we haven't talked about here is the delay, the union's failure to pursue. And you note that the union was required to contact the arbitrator within six months to schedule a hearing. But the union did contact the arbitrator a month after the deciding official sustained a removal. Nothing happened after that. Your Honor, there was a three-year delay. And I think ultimately, you have the arbitrator making a factual finding that's supported by substantial evidence that the union was unjustified in having that amount of time. So really, the only question there- But didn't the arbitrator base it on Lachance? Well, Your Honor, the arbitrator did use the word Lachance. And there again, you have some confusion in the sense that- Do you think Lachance, as an equitable doctrine, is applicable to the statutory remedy in the Back Pay Act? Your Honor, I think probably a better way of the arbitrator characterizing it might have been a failure to mitigate damages. Because the Lachance- Did you argue failure to mitigate to the arbitrator? No, Your Honor. I think that- Isn't that an affirmative defense? Well, the IRS did present- You argued Lachance to the arbitrator. The arbitrator- Which I think you probably now recognize is a legally impermissible way to block statutory damages, at least after recent Supreme Court decisions on that point. Yes, Your Honor. I think that the way that the arbitrator came up, again, in the context of the hearing, which is hardly clear in terms of what the parties were trying to do. With respect to the Lachance issue, though, ultimately there was a very clear stipulation. In contrast to the issue about willfulness, you had a very clear stipulation of the IRS saying, we're not going to say that this claim is barred in its entirety due to Lachance. That's very clear based on the record. But then you have the IRS said in its closing brief, we're not waiving an argument that the damages should be reduced. And whether you call it Lachance or not, I don't think- Was there any evidence put forth on back pay calculations here? No, Your Honor. I don't believe so. Have you done back pay calculations for her, or is it just because it's on appeal, nothing's been done? I'm not aware of anything having been done in that regard. I do- In the typical back pay calculation, don't you get any kind of earnings evidence during that period and subtract that from the- Yes, Your Honor. I think Ms. Sohota notes in her reply brief that there might have been some offset under the Back Pay Act as she presented that information. But it's not in the record, and I'm not aware of what happened with that in terms of an offset for outside earnings. Well, isn't that potentially actually the real mitigation? I mean, if she did- I mean, I know you didn't phrase it this way, but it seems to me that what the arbitrator has done is find a clever way around our ban on blanket time served penalties by imposing a short penalty period, but then just saying, I'm going to find the rest of it barred by latches. If he had just said, the removal here is not sustained, I'm going to impose a suspension time served without any further explanation, you'd agree that's incorrect, right? Well, yes, Your Honor, because that would fall within the ambit of the holding in Green Street that says you can't do that. This was not a time served type of penalty, though. This acknowledged that you had really basically, the arbitrator found this- Well, it's a time served less 10 days. Well, the time served isn't quite- Because he didn't tie up the time served minus 10 days to any mitigating factors in Douglas or failure to mitigate actual damages. If I agree with you, clearly the Back Pay Act requires mitigation of actual damages, but there doesn't seem like there was any evidence of whether she did seek employment, whether she was employed, how much that mitigated damages, and the like. Right. Why at the least, indeed, deduct the six months? The six months with respect to the delay. The six months that she had, that the union had to add. Right, Your Honor. I suppose it might be another way of coming at the issue, but just with respect to the Back Pay Act, I do want to be clear. As we argued in our brief, the arbitrator did not violate the Back Pay Act because under the court's decisions in OLET, an American Federation of Government Employees, if the arbitrator or the board sustains, finds that the employee is at some fault and that some sort of personnel action is warranted, there's no obligation to issue back pay, award full back pay. What the arbitrator was doing here was- on a legally sound principle, not to award back pay. I would agree with that, Your Honor. And Latches is not one. And he didn't apply a proper mitigation analysis. Your Honor, I respectfully disagree. I think that the arbitrator was, we acknowledge he didn't apply a sort of full-blown mitigation analysis. What he was trying to do- He didn't apply any mitigation analysis. Well, he did apply some analysis in terms of what his reasoning was for not awarding the full back pay. And under the circumstances- Which was what? Her delay, mitigation is, she should have tried to get a job. She didn't. Therefore, I'm not going to give her full back pay. There's no evidence to support any evidence that she didn't mitigate, or she did mitigate. Well, Your Honor, I think mitigation, again, I'm not sure that the label matters so much as that the arbitrator had some discretion to come up with a correct remedy here. If mitigation is not the right word, it is that the arbitrator found that the IRS should be held responsible for this extended period of time that is attributable to the union. And in that- What's the legal theory for that? I mean, the Back Pay Act provides back pay for the period from the unlawful removal until the reinstatement. Right. But with respect to the Back Pay Act, we don't, under OLET, in those situations, the OLET decision is an example of this, where an employee is ordered reinstated, but doesn't get the back pay because there's some fault on the part of the employee. And that's really where the Back Pay Act does not compel back pay for the entirety of the period is the point I'm trying to make. Now, the arbitrator- But what was the reason, OLET, was that one of the criminal prosecution cases or things like that? I mean, that's a good reason. Here, his reason was latches, which is a legally impermissible reason. Did the union- Or I'm sorry. Did the arbitrator base his decision on anything other than the union's delay? In terms of the reduction in pay? No. I think it was based on the union's delay. I think his analysis was addressing that. And I mean, in terms of the merits of that decision, again, if you're reviewing that for substantial evidence, he took into account the fact that the union's counsel had said during the hearing that there are many cases that he's handling. This is at page 164 of the appendix, talking about how the union didn't have the personnel to address all these cases, sort of offering that explanation. The arbitrator took that into account and concluded that- What's the propriety of punishing Ms. Sohota for the union's misconduct? Well, Your Honor, I guess it would sort of be comparable to another situation in which a representative or a counsel or an agent does something that adversely affects his client's interests. And in this instance, it is appropriate, in our view, at least the arbitrator found it was appropriate to hold her responsible for her representative's inaction. Can you cite us any cases where we found undue delay on behalf of a representative in an MSPB proceeding or an arbitration proceeding to reduce a back pay award? Your Honor, I don't have any particular authority to offer your- I mean, I think in our brief, on page 27 of our brief, we cited some other cases, but those do deal with latches. I'm not aware of a particular case that fits the description. For these reasons, we would respectfully request that the Court of Appeal- Thank you, Your Honor. When we go right to page 29 in the appendix, I think your friend pointed out some helpfully, or at least helpful to me, clarifying language about what the arbitrator was doing. Why doesn't that demonstrate that the arbitrator actually was sustaining the second charge and the alternative, and don't get caught up in whether it's a charge or reason or a specification? I think we all know what we're talking about. Right. I don't think that those few lines on one page of the arbitrator's 30-page decision, which itself starts out on page 3, setting out the issue of willfulness, can be read as a conclusion that the arbitrator is sustaining those charges. That is what findings of fact and conclusions of law are for. The arbitrator's decision is somewhat ambiguous in that respect. Only if we assume that what had been going on, even though it's not properly reflected in the transcript, is an understanding between everybody that because of the settlement letter, where she agreed that she was negligent, that really you didn't need to go into the basis for the second one, that she admitted that. If that's the case, then you wouldn't expect a full discussion of whether she committed the acts there and whether it should be sustained. He just sustained it and then went on and proposed the penalty he thought was appropriate. Well, we think the transcript shows that the understanding was that the evidence would be presented only on the willfulness issue. But even assuming that the arbitrator properly reached those other charges and properly sustained them, which of course we maintain that he did not, he determined, the arbitrator determined... You're going to have to wrap it up, counsel. The arbitrator determined that those charges only warranted a 10-day suspension. A three-year reduction in Ms. Zahoda's back pay is far out of proportion and, of course, was expressly based on an application of the Latches Doctrine that is in defiance of the Back Pay Act. Thank you. Thank you. The matter will stand submitted.